We have three cases this morning on the calendar of our usual variety. A government contract case, three government employees cases, two veterans benefits cases, and a patent case. Two of the employee cases and one of the veterans cases will be submitted on the briefs and therefore not be argued. Our first case is Precision Images v. United States, 2008-2012. After we hear that case we will adjourn for a very short time and come back with a new panel. So we are ready to proceed, Mr. Phillips. An issue in this case is the scope of administrative record review in a post-award procurement protest. The question is whether it is the whole record, as pointed out in the red brief, or whether it is the decision of the contracting officer most commonly or the source selection authority in some cases. This court, it turns out, has previously addressed this issue. And it did so in the 2001 case of IMPRESA, dealing with the requirement to supplement an administrative record when there was a challenge to the affirmative determination of responsibility. And the court in IMPRESA, looking at the scope of what needed to be supplemented in the administrative record, decided that because in the procurement context it is a contracting officer's decision, a source selection authority's decision, that is challenged. Let me ask you a question. Am I correct in my understanding that your argument is that we can only look at the last page of the decision? That's the contracting officer's decision, Your Honor, and yes, that is correct. I don't understand that argument because of two things. First, the opening sentence of the decision, of the source selection document, says this source selection document sets forth the rationale to the source selection authority's decision for award of this contract. And then, at the very end, the last paragraph says, based on the information presented in this document and in accordance with, they make the determination. Why, when you look at those two statements, isn't it clear that the source selection is based on the entire eight pages and not just the last page? Because, Your Honor, in the federal acquisition regulations, as pointed out by Judge Braden at the Court of Federal Claims, it is the independent judgment of the source selection authority, or most commonly the contracting officer, that is the issue. And the only independent judgment in this case is on the last page of that eight page document. And isn't that, though, because the reason for that is the first seven pages set forth all of the considerations and arguments that are involved in this case, describing the three applicants, describing the results of the investigation and consideration and so forth. I mean, I find it difficult to say that because the thing is captioned at the last page says the word decision, that somehow that means we should ignore everything that's gone before, even though it states in the document that this is based on, among other things, the information presented in this document. Well, the information presented in this document has to mean not just the last page, but the entire eight pages. And tell me what's wrong with my analysis. I think there are two things wrong. First, the preceding seven pages are the considerations and deliberations, the reflection of it, as a performance confidence assessment group, not the contracting officer. Secondly, by the caption of the document, the decision is reflected on the last page, and the decision succinctly is unlawful under the procurement regulations. But the caption of it in the first page said source selection decision document. Yes, it certainly does. It has to be that what they're saying is these eight pages are the decision on which source they will accept for supplying this product. But the contracting officer on the decision page nowhere considers or adopts the preceding seven pages. As I said, in the Impressa case, Impressa teaches under the law of this court that it is the contracting officer's decision that is to be reviewed. And here it's on the last page of the eight pages. Well, let me just ask you one more question. Assuming, just for the sake of argument, that someone were to look and consider all eight pages, do you agree that if you can look and consider all eight pages, the decision would be okay? I thought you conceded that in your brief, but I'm not sure. I just want to find out. for the Court of Federal Claims that you could find support for an alternative decision in those seven pages. However, it is a close decision, and under the procurement regulations, it is the decision of the Air Force contracting officer and not the court and not the parties before the court that is to be reviewed. It's the Air Force contracting officer who is to make the decision. In this case, this is a special case. Normally, in the procurement context, you look at quality, you look at performance, and you look at price or cost. In this case, the Air Force engineers have clearly decided that all three of these instruments are equally acceptable. These are commercial, off-the-shelf instruments. What do you mean by off-the-shelf? You keep referring throughout your brief to this being an off-the-shelf item. Does that mean they have it in stock, and when it's ordered, they just go and pick it up the way I pick off a can of soup or some bottle of milk at the grocery store, or do you mean something else? No, Your Honor, that's precisely what I mean, and that's precisely what I'm talking about. It's a term of art in the procurement context, but it means you can go to an appropriate vendor and buy one off-the-shelf. That's what we're talking about, and it's about the size... Are you saying, for example, that the successful bidder in this case doesn't have to manufacture this product in order to perform the contract, but it just goes to a bin somewhere and takes a bunch of these things out? The successful offeror in this case has to deliver to the Air Force an instrument, an off-the-shelf instrument that meets the performance requirements of the Air Force, and in this case, the Air Force has determined that all three instruments meet those requirements and that all three instruments are available off the shelf. Now, the difference that we're talking about and the decision that is required to be made and has not so far been made is whether or not... Well, let me get back to the point I was going to make. This is a special case. Quality is conceded. All three are the same, so there's only performance and there's only price, and under the procurement regulations, because Precision Images lacks relevant past performance information, that lack of information cannot be considered either favorably or unfavorably. So it gets down in making a best value decision to two propositions. One is price, and the other is whether or not the Air Force contracting officer decides... You said lack of experience cannot be considered favorably or unfavorably, but isn't it to be considered unfavorable in comparison with someone with successful experience? No, Your Honor, I'm sorry. That's not what the procurement regulations say. The procurement regulations say that in the case of an offeror who lacks relevant past performance information, that lack cannot be considered favorably or unfavorably. Well, if that's right, what it means is that any contractor with no experience can turn a procurement into a price-only procurement, because if they have no experience, you don't even consider that factor, and then all that's left is price, even though the government initially indicated that past performance would be given significantly greater weight than price. Well, and it's the government, Your Honor, that set the terms of the solicitation, not the offerors. Do you agree with Judge Friedman's characterization of what the consequences would be of accepting your argument? I'm into my rebuttal, but I'll answer quickly. And the answer is you have to look also at a precedential decision of the government accountability office, and that decision says that making a best value determination, you can decide whether or not there are particular advantages that are worth the price premium. That was not done here. In this case, all that was looked at was the disadvantage of dealing with my client, and that was unlawful. We'll save your rebuttal time, Mr. Phillips. Mr. Ashman.  Your Honors, as the government demonstrated in its brief, and as the appellant's papers and oral presentation confirmed, the appellant has failed to satisfy its burden to show that the trial court's decision is contrary to law or that the trial court's factual findings were clearly erroneous. Specifically, the appellant has failed to satisfy its threshold burden of demonstrating that it suffered competitive prejudice from any procurement regulation violation. Indeed, the appellant has never even attempted to explain, either before the trial court or now before this court, how the administrative record of this procurement supports a factual finding of prejudice. Now, before responding to the specifics of the appellant's argument, the government feels it's important to briefly walk through the standard under which the trial court's decision will be reviewed. It is a fundamental legal principle that to prevail in a procurement protest, it is not enough for the protester to allege a violation of statute or regulation. Rather, the protester has the burden to demonstrate as a matter of fact, based on the contents of the administrative record, that absent any violation, it would have a substantial chance to receive the contract award. As this court explained in Bannon v. The United States, when reviewing an agency's procurement decision... ...the only factor that was properly suited was price. And if you placed it solely on price, you'd not only have a favorable chance, you'd have to get the contract because he was the lowest bidder. So the critical question, it seems to me, is whether past performance was an appropriate consideration for the award of this contract. Correct, Your Honor. The government feels that's one of the decisions the court will have to decide, in that that is actually a legal decision on how you interpret the solicitation. On the point of prejudice, the point of prejudice assumes that we resolve the substantive issue in your favor. Whereas he says no, under the proper resolution of the substantive issue, only price. Price is the only factor to be considered. And what could be more prejudicial than we're the lowest bidder and we didn't get the contract? Well, the first step in that analysis, Your Honor, is to make a legal determination on whether or not there was a violation of the procurement regulation in this case. And the case law from this court says that just showing there wasn't a violation is not enough. You have to go to the second step of whether or not there was a factual, prejudicial impact on the... Well, but don't you agree that if we were to agree with his construction of what was before the administrative air force, if the only issue now is price, you don't question that he has shown prejudice, do you? Under that scenario, Your Honor, no. But if the court was to determine that an offeror with an unknown confidence assessment rating with the lowest price under the terms of the solicitation was automatically entitled to a contract award, then no, there is no prejudice analysis. So the prejudice argument, it seems to me, is intricately tied in to the merits. In a way, Your Honor, they can be clearly distinguished because the first analysis is interpreting the solicitation and the appellant's argument that it is entitled to an automatic contract award where it has an unknown confidence assessment is clearly contradicted as the trial court concluded by the terms of the solicitation. The terms of the solicitation clearly state that even if an offeror has a neutral or unknown confidence assessment, that the contracting officer would still include that within its best value determination. So there's two steps to that analysis. Under the regulation, because the appellant had no demonstrated past performance capability, it was to receive an unknown confidence rating. The second step, however, the regulation does not speak to. The contracting officer is still allowed to take that rating and factor it into the best value equation, which in this case, performance, even an unknown confidence rating, would be factored into the equation where performance is considered significantly more important than price. And it cannot be stressed enough that this is a FAR Part 15 competitive negotiated procurement, whereby the agency is permitted to afford non-price factors such as performance more weight than price. But if these flaw detectors are truly off-the-shelf items, what performance factor is at issue when you're just talking about taking something off the shelf? They've already supplied camera film. They know how to reach up, put a ladder up against the shelf, and take something down. So are these truly off-the-shelf? Yes, Your Honor. The performance, I'm sorry, the performance issue. You say they are off-the-shelf items? Yes, Your Honor. They are commercial off-the-shelf items. So why isn't price the only factor? The performance rating does not deal with the technical aspects of these instruments. It's past performance. It's the contractor's demonstrated ability to perform this contract. And as the trial court clearly noted, that this contract... If it's an off-the-shelf procurement, how does the contractor deal with past performance? He shows he's got two men who are very adept at climbing ladders. I don't quite understand what it is. Because I take it everybody can produce this item and provide it. And the question is whether if they agree to provide a certain number over a certain period, they will be able to do that. They may say they'll provide 700 over five years, but after five years they may only produce 50. And it seems to me as far as taking it off-the-shelf, I don't understand what they're supposed to do. What is it? The question of who your suppliers are, which shelves you go to? The key difference is this, Your Honor. This contract had a base year in which the contractor was to demonstrate the ability of its product to satisfy the Air Force's needs. And this involved product testing, providing testing reports. There's a warranty support requirement. That's beginning to sound, though, like when you say its product, like we're talking about something that isn't really just a generic off-the-shelf item. I mean, what are we talking about here? Are we talking about something as to which there is room for debate as to quality of the particular product, some kind of fabrication that has to go into it, some kind of subcontracting? Or is it literally? When you say to me off-the-shelf, I really think I have the same view that Judge Friedman has suggested, that you can go to Home Depot, and if you have a tall enough reach, you can grab it and take it. And the only question then remains is whether you, as a contractor, have a truck that can get it from Home Depot to my place. Is that not this case, and if not, why? No, it's not, Your Honor. How does that differ from this case when you're talking about off-the-shelf? What's different about this off-the-shelf item from the Home Depot example? I would not use the term off-the-shelf. This is a very sophisticated electronic equipment designed to detect... Let me phrase the question a little differently to you. Assuming whoever gets this contract, do they then manufacture the device in order to meet the contract, or is the stuff already there? The awardee, in this case, is a manufacturer of this product, Your Honor. Now, I understand that, but let's assume that the contract is awarded to G, and let's assume that G gets the contract. What does G.E. do? Does it just say to someone, OK, you'll find this product in bin 6B? Take out ten of them to start with and test them to make sure they meet the standards, or does it look at various descriptions and various specifications and say, OK, let's manufacture ten of them? Your Honor, in this case, there was a product description published by the Air Force that G.E. will manufacture its product to meet that product description. So it's not a product that G.E. keeps on stock en masse. It is a very discreet type of product. It would have to make it to order. I believe so, yes, Your Honor. And presumably, Precision's check supplier also would have to make it to order. We don't know. Who called this an off-the-shelf item? Where did that term come from? I believe that's appellant's term, Your Honor. Would you claim that that's a curveball? It may be, Your Honor. I believe that it's too much of a colloquialism to judge this product as an off-the-shelf, something analogous to going to the department store and picking up a blender or a coffee maker. This is a very sophisticated piece of equipment to serve a very important aircraft maintenance purpose. So I don't think that's an apt term. And getting back to the question of performance, there is more to this contract than simply providing this product. It is a lifetime of providing warranty support and product support, and there was a front-end requirement of testing and user training that the awardee had to provide the Air Force, and that's where the demonstrated performance criteria of the solicitation. Does the contractor have to do the testing, or can that be subcontracted? In this case, GE, in this proposal, did the testing, offered to do the testing. No, but under the invitation for proposals mentions about testing, does it require the contractor to do the testing, or can the contractor say, in this case, could they say, okay, the testing has been done by our supplier in Czechoslovakia, and they have stated that it meets the requirements. Would that be sufficient from the Air Force's point of view? I don't believe the solicitation spoke to whether or not subcontractors can perform the testing, so I wouldn't want to venture a guess without more knowledge. Incidentally, I just have one question I have. Has this contract performance started, or is it still on hold? No, Your Honor. After the trial court issued a decision, in this case in the government's favor, the Air Force began contract performance, and the base year of testing and product verification has been conducted. So the contract is now in effect. Yes, Your Honor. What is your view, to the extent that there is any guidance from the regulations, as to what you do in a situation in which you have competing vendors in which one has a track record, but a track record which, let's say by hypothesis, is not terrible but is spotty, versus one that has no track record? Do we have any guidance as to how those two are to be assessed? Well, Your Honor, the first guidance would be the terms of the solicitation and how such an assessment would be conducted by the Air Force. In this case, while the regulation says the contractor with no prior history cannot be given a negative assessment, the solicitation, which the regulation does not discuss, the best value tradeoff portion of the solicitation, this solicitation stated that it would still factor a neutral performance rating into the best value decision. But to say that you factor it in doesn't tell me what the factor is. Give me some idea of what the solicitation or any guidance there is as to how you weight those competing levels of performance. Or is it just that the contracting officer says, I don't know, I suppose I actually think that some performance, even though it's been rather shabby in parts, is better than no performance at all, whereas another contracting officer is free to say, no, I think no performance at all, I'll take a risk on that, rather than somebody who's shown that they mess up fairly frequently. Is there any guidance with respect to that question? I don't believe there's guidance from case law from this Court. Is there any guidance either in the solicitation or the regulations or anything? In other words, when you say that these factors can be taken into account, are you really saying that the contracting officer can do whatever she pleases with the question of lack of prior experience versus some degree of experience? Well, if you have an offeror who's demonstrated some experience, if the agency has evaluated that experience as warranting an affirmatively positive performance competence assessment, then it is the contracting officer's judgment to weight that or to value that greater than a neutral performance assessment under the terms of this solicitation where performance was specifically designated as significantly more important than price. And if an offeror going into the solicitation felt that those terms were unfair because it had no past performance, then under this Court's decision in Blue and Gold Fleet, it was obligated to raise that objection prior to the submission of this. I suppose you'd say that how much weight to give to particular past performance by a particular offeror on a particular contract basically has to be a judgment factor for the contracting officer that you can't spell out in detail if it's so-and-so and if it's so-and-so will give you four points, but if it's only so-and-so and so-and-so will give you two points. You can't spell that out. You make a judgment. Then maybe depending on the product and the situation involving the contractor, it may well be that different weight is to be given the same type of experience in different cases. Yes, Your Honor, and in this case the contracting officer was afforded the judgment to make that call, and she did so underneath the terms of the solicitation and the best value equation in this case. I see that I'm out of time, and I would just, for the foregoing reasons, the government respectfully request the court to affirm the trial court's decision in this case. In other words, your performance is passed. Thank you, Mr. Ashman. Mr. Phillips has a little rebuttal time. The COTS requirements are stated in various places in the record of this acquisition, including in the appendix at pages 140, which is the Air Force Engineer's Market Research Report, and page 200, which is part of the solicitation. The Government Accountability Office has talked in a decision that is relevant to this case that the contracting officer, in making a best value decision, can decide in trading off low price versus the higher price that there are advantages to the performance of the selected offeror. That, however, in this case, is a very close case, and it's a very close case because this acquisition is for hundreds of these instruments. There is no experience within the United States Government, the Navy, or the Air Force, and this is a joint service requirement, of purchases of hundreds of these instruments. And the ratings here went all the way from high confidence to no confidence. The two manufacturers got satisfactory confidence rating, and my client got an unlawful and unsatisfactory little confidence rating. What is it that is beyond COTS in this acquisition? The red brief explains this at page 6. It is a pre-production test of a commercial off-the-shelf unit and a commercial off-the-shelf manual, and a three-day product familiarization at the contractor's facility. That's what we're looking at. That's what has to be weighed vis-a-vis the price premium, which happens to be 19% or $765,000 for those three days of product familiarization. That's a very close question. Very, very close. And the Secretary made clear yesterday in discussing the Air Force's decision to reopen the tanker competition. Thank you. Thank you, Mr. Phillips. The case will be taken under advisement. The court will briefly adjourn and return in a few moments. All rise. The honorable court will take a short recess.